**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2013 DEC 20 ⊃ 4: 18

UNITED STATES OF AMERICA )
                          )
          v.              )
                          )     Cr. No. 1:13-cr-00001-JL
ANGEL LAUREANO RIVERA     )

---

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, John P. Kacavas, the United States Attorney for the District of New Hampshire, and the defendant, Angel Laureano Rivera, and the defendant's attorney, Paul Garrity, Esq., enter into the following Plea Agreement:

1. The Plea and The Offense.

The defendant agrees to plead guilty to Counts One through Six inclusive of the Indictment charging him with Possessing Stolen Government Property With Intent To Convert, in violation of 18 United States Code Section 641, and to Count Seven of the Indictment charging the defendant with Conspiracy To Commit Possession Of Stolen Government Property with Intent To Convert in violation of Title 18, United States Code, Sections 371 and 641, and to Counts Eight through Thirteen inclusive of the Indictment charging the defendant with Aggravated Identity Theft in violation of Title 18, United States Code, Section 1028A(a)(1)(b) and (c).

In exchange for the defendant's guilty plea, the United States agrees to recommend a sentence of the low end of the advisory sentencing guideline adopted by the court, on Counts One through Seven inclusive, all to run concurrent, and to recommend that all sentences on Counts Eight through Thirteen inclusive run concurrent with each other.

2. The Statute and Elements of the Offense.

˘1˘

Counts One through Six:

    Title 18 United States Code §641 provides, in pertinent parts:

> Whoever embezzles, steals, purloins, or knowingly converts to his use
> or the use of another, or without authority, sells, conveys or disposes of
> any record, voucher, money, or thing of value of the United States or of
> any department or agency thereof, or any property made or being made
> under contract for the United States or any department or agency
> thereof; or

> Whoever receives, conceals, or retains the same with intent to convert it
> to his use or gain, knowing it to have been embezzled, stolen, purloined
> or converted-
> Shall be fined under this title or imprisoned not more than ten years, or
> both; but if the value of such property in the aggregate, combining
> amounts from all the counts for which the defendant is convicted in a
> single case, does not exceed the sum of $1,000, he shall be fined under
> this title or imprisoned not more than one year, or both.

> The word "value" means face, par, or market value, or cost price, either
> wholesale or retail, whichever is greater.

    In order to prove that the defendant committed the offenses set forth in Counts One through

Six, the government would be required to prove the following essential elements beyond a reasonable

doubt:

    First, the defendant knowingly received, concealed, or retained money or property of value;

    Second, the money or property belonged to the United States;

    Third, the defendant knew that the money or property had been embezzled, stolen, or
converted from the United States;

    Fourth, the defendant intended to convert the money or property to his own use or gain; and

    Fifth, the value of the money or property was more than $1,000.

Model Crim. Jury Instr. 9th Cir., 8.40 Receiving Stolen Government Money or Property

Count Seven:

Title 18 United States Code§ 371 provides, in pertinent part:

> If two or more persons conspire either to commit any offense against
> the United States, or to defraud the United States or any agency thereof
> in any manner or for any purpose, and one or more of such persons do
> any act to effect the object of the conspiracy, each shall be fined under
> this title or imprisoned not more than five years, or both.

In order to prove that the defendant committed the offenses set forth in Count Seven, the

government would be required to prove the following essential elements beyond a reasonable doubt:

> First, that the agreement specified in the indictment, and not some other
> agreement or agreements, existed between at least two people to Cause
> Possession of Stolen Government Property with Intent to Convert;

> Second, that the defendant willfully joined in that agreement; and

> Third, that one of the conspirators committed an overt act during the period of
> the conspiracy in an effort to further the purpose of the conspiracy.

First Circuit Pattern Jury Instructions, Criminal Cases, §4.18.371 (1998 ed. - updated
2012).

Counts Eight through Thirteen:

Title 18 United States Code §1028A(a)(l)(b) and (c) provide, in pertinent part:
(a)(1)Whoever, during and in relation to any felony violation enumerated in subsection (c),
knowingly transfers, possesses, or uses, without lawful authority, a means of
identification of another person, shall, in addition to the punishment provided for such
felony, be sentenced to a term of imprisonment of 2 years.

In order to prove that the defendant committed the offenses set forth in Counts Eight through

Thirteen, the government would be required to prove the following essential elements beyond a

reasonable doubt:

> First, that the defendant transfers, possesses, or uses, a means of identification
> of another person;

> Second, that the defendant did so knowingly, without lawful authority, and;

Third, the defendant did so during and in relation to any felony violation enumerated in subsection (c) of 18 U.S.C. §1028A.

Model Crim. Jury Instr. 9th Cir. 8.83 Fraud in Connection with Identification Documents (2010)

3. Offense Conduct

The defendant stipulates and agrees that if this case proceeded to trial, the government would prove the following facts and those facts would prove the essential elements of the offense beyond a reasonable doubt:

On March 29, 2012, Manchester Police Department officers would testify that they arrested the defendant and two of his co-conspirators at Citizens Bank in Manchester, NH.

One of the co-conspirators (hereinafter "the testifying co-conspirator") would be expected to testify that, accompanied by the defendant, she had attempted to negotiate a fraudulently obtained U.S. Treasury tax refund check payable to a U. S. citizen who would testify that they were fraudulently in possession of said check and of her identity information. The testifying co-conspirator would testify that she presented the check and a counterfeit New York state driver's license to a bank employee and attempted to deposit a portion of the check's proceeds into the defendant's business bank account. The testifying co-conspirator, and the arresting officers would testify that she, when confronted by police, but not in custody, admitted that she fraudulently represented herself to be the citizen whose identity information was on the check when she attempted to negotiate the U.S. Treasury check in question.

The officers would testify that the defendant and his other co-conspirator were arrested in the parking lot where they were waiting for the testifying co-conspirator to complete the transaction. The testifying co-conspirator would testify that the defendant, after initially assisting her, left the bank to wait in the car once the defendant believed the transaction was

˅4˅

likely to be completed.

In addition to the fraudulently obtained U.S. Treasury tax refund check referred to above, listed in Counts One and Eight of the Indictment, and the counterfeit New York driver's license seized from the testifying co-conspirator in the bank, four other fraudulently obtained tax refund checks listed in Counts Two through Five and Counts Nine through Twelve of the Indictment were seized by Manchester Police Department, from the defendant's vehicle pursuant to a search warrant obtained after the defendant's arrest, and all would be introduced into evidence.

Additionally, according to subpoenaed bank records, kept in the regular course of the banks' business, which would be introduced into evidence, yet another fraudulently obtained tax refund check, listed in Counts Six and Thirteen of the Indictment, was deposited into the defendant's bank account on March 26, 2012. Footage from a regularly maintained security camera in the defendant's bank, depicting defendant and the non-cooperating coconspirator making this transaction, would also be introduced into evidence.

As is set forth below, the testimony of the testifying co-conspirator will further establish that this deposit of a fraudulent check was a part of the same course of conduct, as she was present when the defendant and the non-cooperating coconspirator deposited it a few days before all three were arrested by the Manchester Police Department.

Officers of the Manchester Police Department would testify that each of the four (4) fraudulently obtained U.S. Treasury tax refund checks seized from the vehicle the defendant was operating at the time of his arrest were wrapped around a counterfeit New York driver's license. All these would be introduced into evidence, from which it would be apparent that payee names and addresses that appeared on said checks corresponded to the false licenses, all of which bore

photographs of one of the defendant's coconspirators, so they could fraudulently negotiate the checks.

Agents of the U.S. Internal Revenue Service would testify that they reviewed IRS transcripts and Form W-2 information filed with the IRS and determined that those four (4) fraudulently obtained U.S. Treasury tax refund checks were also predicated by the filing of a false federal income tax return with the IRS.

The testifying co-conspirator would further testify as follows:

She met the defendant though a person known to her as Miguel, that she and the defendant met in the Bronx, NY, and that the defendant was in the vehicle that was ultimately used in the offense in New Hampshire.

She would testify that the defendant told her, "I want to get you some money" and that he later told her he had checks that he wanted her to cash, after which he took her to a photographer to take the photographs of her ultimately used on the counterfeit drivers' licenses referred to above.

She would further testify that on March 28, 2012, sometime between 4:30PM and 5:00, the defendant picked her up with the non-cooperating coconspirator, and that the defendant had told her it was an overnight trip, so she packed a bag; they then drove to Queens, stopped to get something to eat, after which the defendant went off with the non-cooperating coconspirator to get the counterfeit drivers licenses made with her pictures.

She would further testify that on the next day, March 29, 2012, they went to the above-mentioned Citizen's Bank in Manchester, NH where Angel Rivera gave her the fraudulent check and counterfeit driver's license she possessed when arrested, and accompanied her into the bank

˜6˜

for her to attempt to negotiate the check, and that the defendant filled out the deposit slip, went up to the teller with her, and told the teller he wanted to do a split deposit into his account. Personnel of the bank would corroborate this testimony. She would further testify that the defendant then left the bank while she waited for the transaction, but also sent the non-cooperating coconspirator to give her a cell phone, on which the defendant called her and asked, "Did you get it done?", to which she replied that she was still waiting and that there was no problem, but that as soon as she ended the call the police arrived.

She would further testify that she next saw Angel Rivera on the street in the Bronx on approximately April 29, 2012, and that the defendant said, "Do you know what happened? I want you to tell them the truth", then she stated he told her to tell the police that she came to buy a car from him in NH, but that she told the defendant "I'm not going to lie".

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.    A maximum prison term of ten (10) years for Counts One through Six inclusive, (18 U.S.C. §1029(c)(1)(A)(i)), five (5) years for Count Seven (18 U.S.C. §371) and a mandatory prison term of two (2) years for Counts Eight through Thirteen, which, at the discretion of the Court may run concurrent or consecutive to one another, but which must run consecutive to the sentences on Counts One through Seven (18 United States Code §1028A(a)(1)(b) and (c));

B.    A maximum fine of $250,000.00 (18 U.S.C. §3571));

C.    A term of supervised release of not more than three years. See 18 U.S.C. §3583(b)(2). The defendant understands that the defendant's failure to comply

˅7˅

with any of the conditions of supervised release may result in revocation of

supervised release, requiring the defendant to serve in prison all or part of the

term of supervised release, with no credit for time already spent on supervised

release (18 U.S.C. §3583).

The defendant also understands that he will be required to pay a special assessment of

$100 for each count of conviction, at or before the time of sentencing; and that the Court may

order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. §3663 or §3663A.

5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

and that the Court is required to consider the United States Sentencing Guidelines as advisory

guidelines. The defendant further understands that he has no right to withdraw his guilty plea if

the applicable advisory guideline range or his sentence is other than he anticipated, except as

expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation

Office shall:

A.     Advise the Court of any additional, relevant facts that are presently known or may
       subsequently come to their attention;

B.     Respond to questions from the Court;

C.     Correct any inaccuracies in the pre-sentence report;

D.     Respond to any statements made by him or his counsel to a probation
       officer or to the Court.

The defendant understands that the United States and the Probation Office may address

the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range with the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the government and the defendant stipulate to the following:

A.      The United States agrees to recommend a sentence of the low end of the advisory sentencing guideline adopted by the court, on Counts One through Seven inclusive, all to run concurrent, and to recommend that all sentences on Counts Eight through Thirteen inclusive run concurrent with each other.

The defendant understands that the Court is not bound by the foregoing agreement and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept the above stipulation, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea

Agreement.

   7. Acceptance of Responsibility.

   The United States agrees that it will not oppose an appropriate reduction in the

defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the

defendant's apparent prompt recognition and affirmative acceptance of personal responsibility

for the offense.  The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

   A.   Fails to admit a complete factual basis for the plea at the time he is
        sentenced or at any other time;

   B.   Challenges the United States' offer of proof at any time after the plea is
        entered;

   C.   Denies involvement in the offense;

   D.   Gives conflicting statements about that involvement or is untruthful with
        the Court, the United States or the Probation Office;

   E.   Fails to give complete and accurate information about his financial status
        to the Probation Office;

   F.   Obstructs or attempts to obstruct justice, prior to sentencing;

   G.   Has engaged in conduct prior to signing this Plea Agreement which
        reasonably could be viewed as obstruction or an attempt to obstruct
        justice, and has failed to fully disclose such conduct to the United States
        prior to signing this Plea Agreement;

   H.   Fails to appear in court as required;

   I.   After signing this Plea Agreement, engages in additional criminal conduct; or

   J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. §3E1.1(b).

8. Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A.    To plead not guilty or to maintain that plea if it has already been made;

B.    To be tried by a jury and, at that trial, to the assistance of counsel;

C.    To confront and cross-examine witnesses;

D.    Not to be compelled to provide testimony that may incriminate him; and

E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be

˅11˅

entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.  Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.  Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C.  Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.  Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.  Is completely satisfied with the representation and advice received from his undersigned attorney.

10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached

˘12˘

without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.  Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

12.  Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Indictment in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13.    Waivers.

Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.    His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.    The sentence imposed by the Court if within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

˘13˘

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel in the negotiation of this Plea Agreement or at the sentencing hearing.

B. Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§2241 or 2255.  By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel in the negotiation of the Plea, Plea Agreement or the sentencing hearing.  The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a

ˇ14ˇ

representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant to pursue an appeal as authorized by law.

14.    No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.    Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16.    Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

                                JOHN P. KACAVAS
                                United States Attorney

˘15˘

16. **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

JOHN P. KACAVAS
United States Attorney

Date: 12/20/13                    By: 

Alfred Rubega
Assistant U.S. Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
alfred.rubega@usdoj.gov

The defendant, Angel Laureano Rivera, certifies that he has read this 16-page Plea Agreement and that he fully understands and accepts its terms.

Date: 12/17/013

Angel Laureano Rivera, Defendant

I have read and explained this 16-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 12/17/13

Paul Garrity, Esq.
Attorney for Angel Laureano Rivera

**Interpreter's Oath**

I, EDWIN MOSAVERA, a SPANISH language interpreter, do solemnly swear or affirm that, to the best of my ability, I have interpreted this Plea Agreement accurately and faithfully.

Signed: _____                    12/17/13
                                              Date

˘16˘